**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF KENTUCKY**
**LOUISVILLE DIVISION**
**CIVIL ACTION NO. 3:26-cv-00386-CHB-LLK**

**ARTHUR MIGIROV,** and
**RAISA MIGIROV** **PLAINTIFFS**

**v.**

**AMERICAN STRATEGIC INSURANCE CORP.,**
d/b/a Progressive Home **DEFENDANT**

---

## MEMORANDUM OPINION AND ORDER

This matter has been referred to Magistrate Judge Lanny King to hear and determine pretrial matters. [DN 5]. Defendant American Strategic Insurance Corp. ("ASIC") has moved to bifurcate Plaintiff's coverage and bad faith claims and to stay discovery of the bad faith claims through the present motion before the Court (this "Motion"). [DN 9]. In their response, Plaintiffs state they do not oppose bifurcation of the claims but oppose the stay of discovery. [DN 13]. Defendant filed a reply. [DN 14]. As such, this matter is ripe for review.

In consideration of the Motion, Plaintiffs' response, and the relevant law, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant's Motion for the following reasons.

### I. Background and Procedural History

Plaintiffs are owners of a property located at 7505 Eric Edward Way, Louisville, KY 40220. [DN 1-1]. Defendant ASIC issued a policy of insurance for their home, effective between July 4, 2024 and July 4, 2025. [DN 13]. On September 27, 2024, a windstorm damaged Plaintiffs' home, allowing water to enter and ruin personal property. *Id.* Plaintiffs filed an insurance claim three days later. *Id.*

While ASIC does not dispute coverage, the parties disagree on the scope and cost of repairs, leading to competing estimates and a post-suit demand of $375,000. [DN 12]. On September 26, 2025, Plaintiffs filed suit against Defendant in Jefferson Circuit Court for breach of contract, bad faith (statutory and common law), violations of the Kentucky Consumer Protection Act, and violations of 806 KAR 12:095. [DN 1-1]. Defendant subsequently removed the case to federal court on May 26, 2026. [DN 1].

During their August 2026 discovery planning meeting, the parties agreed to bifurcate the coverage and bad faith claims for trial, though Plaintiffs opposed Defendant's request to stay discovery on the bad faith claims.

## II. **Standard**

A federal court sitting in diversity "generally must follow state substantive law and federal procedural law when resolving state claims falling within their jurisdiction." *Cook v. Greenleaf Township*, 861 F. App'x 31, 34 (6th Cir. 2021). Accordingly, with respect to bifurcation, federal law governs. *Nationwide Mut. Fire Ins. Co. v. Jahic*, No. 3:11-cv-00155, 2013 WL 98059, at *1 (W.D. Ky. Jan. 7, 2013). Rule 42(b) of the Federal Rules of Civil Procedure provides that "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues, claims, crossclaims, counterclaims, or third-party claims." Fed. R. Civ. P. 42(b). The burden to establish the appropriateness of bifurcation rests with the movant. *Clift v. LaFarge W., Inc.*, No. 5:14-cv-00057, 2015 WL 13236718, at *3 (W.D. Ky. Aug. 7, 2015).

The Sixth Circuit has held that "[t]he decision whether to try issues separately is within the sound discretion of the court[.]" *Nelson v. Columbia Gas Transmission, LC*, 808 F. App'x 321, 329 (6th Cir. 2020) (internal quotations and citations omitted); *Live Nation Worldwide, Inc. v. Secura Ins.*, 298 F. Slupp. 3d 1032, 1035 (W.D. Ky. 2018). Bifurcation is considered on a case-by-case

basis. *See In re Bendectin Litig.*, 857 F.2d 290, 307 (6th Cir. 1988). "In determining whether bifurcation is appropriate, the court should consider several factors, including 'the potential prejudice to the parties, the possible confusion of the jurors, and the resulting convenience and economy.'" *Clift*, 2015 WL 13236718, at *3 (quoting *Wilson v. Morgan*, 477 F.3d 326, 339 (6th Cir. 2007) (internal citation omitted)).

"Although bifurcation of the trial does not necessarily require bifurcation of discovery, the decision to stay [] discovery is within the discretion of the trial court." *O'Hara v. Laurel Cnty. Corr. Ctr.*, No. 6:23-cv-00026-CHB, 2023 WL 5729212, at *11 (E.D. Ky. Sept. 5, 2023) (quoting *Riedling v. Motorist Ins. Grp.*, No. CV-11-47-DLB, 2011 WL 13228003, at *2 (E.D. Ky. June 8, 2011) (cleaned up)). Like bifurcation, trial courts possess broad discretion and inherent authority to stay discovery pending the resolution of preliminary dispositive questions. *Gettings v. Bldg. Laborers Loc. 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (citing *Hahn v. Star Bank*, 190 F.3d 708, 719 (6th Cir. 1999)). However, the issue of bifurcation is independent of staying discovery. *Warner ex rel. Bernard Ridge Church of God v. State Auto Prop. & Cas. Ins. Co.,* No. 118-CV-168-GNS-HBB, 2019 WL 13218779, at *3 (W.D. Ky. Apr. 30, 2019). "Stay is appropriate where claims may be dismissed based on legal determinations that could not have been altered by any further discovery." *Id.* (citing *Gettings*, 349 F.3d at 304). Thus, it is in the Court's discretion to bifurcate the claims yet allow discovery to proceed as to both claims. *See id.*

## III. Analysis

### a. Bifurcation of Claims

The Court finds that bifurcation of the coverage and bad faith claims is appropriate.

District courts in the Western District of Kentucky have in the past bifurcated claims addressing coverage and bad faith against insurance companies in the usual course, as deciding the first claim may obviate the need to litigate the second. *See Walker v. Seneca Ins.*, No. 5:18-cv-

00077-GNS-LLK, 2018 WL 4462232 at *1 (W.D. Ky. Sept. 18, 2018) (collecting cases). This is true with both third-party insurance disputes (where the claimant is not the insured) and first-party disputes (where the claimant is the insured). *Id.* Under Rule 42(b) of the Federal Rules of Civil Procedure, claims may be bifurcated for (a) convenience and economy and avoid (b) confusion to the jury and (c) prejudice to the parties. Fed. R. Civ. P. 42(b); *Clift*, 2015 WL 13236718, at *3.

In cases of insurance coverage and bad faith, the principal questions to determine whether convenience and judicial economy would be served by bifurcation are: (1) will disposition of the underlying contract claim dispose of the entire case, and (2) are the factual and legal issues "inextricably intertwined" with the bad faith claims? *Walker*, 2018 WL 4462232, at *2.

Here, the first question resolves in favor of bifurcation. Plaintiff's bad faith claims do not survive without an underlying contract breach. *Davison v. Am. Freightways, Inc.*, 25 S.W.3d 94, 100 (Ky. 2000) ("Absent a contractual obligation, there simply is no bad faith cause of action, either at common law or by statute.").

The resolution of the second question is less clear. Under Kentucky law, Plaintiffs must prove the following elements to prevail on their bad faith claims: "(1) the insurer must be obligated to pay the claim under the terms of the policy; (2) the insurer must lack a reasonable basis in law or fact for denying the claim; and (3) it must be shown that the insurer either knew there was no reasonable basis for denying the claim or acted with reckless disregard for whether such a basis existed." *Wittmer v. Jones*, 864 S.W.2d 885, 890 (Ky.1993) (internal quotation marks omitted); *Shepherd v. Unumprovident Corp.*, 381 F.Supp.2d 608, 612 (E.D. Ky. 2005) (citing *Curry v. Fireman's Fund Ins. Co.*, 784 S.W.2d 176, 178 (Ky. 1989)) (the elements are the same whether the bad faith claim is based in common law or statute). Whereas a breach of contract claim requires the Plaintiffs to demonstrate (1) the existence of a contract; (2) a breach of that contract; and (3)

damages flowing from the breach of contract. *Rouse v. Farmer*, No. 2015-CA-001626-MR, 2018 WL 2078030, at *4 (Ky. Ct. App. May 4, 2018). Recently in *McKinley v. Allstate Ins. Co.*, the court found that the evidence required to litigate a coverage claim is the same as the evidence to litigate a bad faith claim. No. 3:26-CV-276, 2026 WL 1232288, at *3 (W.D. Ky. May 5, 2026). Specifically, "[t]he evidence to be offered by [the insurance company] to establish that it acted with a reasonable basis or upon a reasonable foundation in denying the claim," i.e., the bad faith claim, "will be the same proof it would offer to counter [the p]laintiffs' allegation that the insurance contract was breached by the failure to pay the claim," i.e., the coverage claim. *Id.* The court found the issues to be "inextricably intertwined." *Id. McKinley* and the present case present the same issues. This Court therefore finds the issues to be "inextricably intertwined."

However, as the court in *McKinley* says, "that claims may require some of the same proof does not require denying bifurcation where bifurcation furthers the interest of judicial economy." *Id.* (citing *Dippin' Dots, LLC v. Travelers Prop. Cas. Co. of Am.*, 322 F.R.D. 271, 274 (W.D. Ky. 2017)). Moreover, in insurance cases, avoidance of jury confusion and prejudice against a party are often in favor of bifurcation. Courts have found "[i]ntroducing at trial evidence related to bad faith claims could likely confuse the jury" because jurors may conflate the bad faith claim with breach of contract or negligence claims. *Rowlett v. LM Ins.*, No. 6:20-CV-253-REW, 2021 WL 8998926, at *3 (E.D. Ky. 2021); *see also Forrest B. White, Jr. Masonry, Inc. v. ABG Calking Contractors, Inc.*, No. 5:13-CV-00194-TBR, 2014 WL 991734, at *4 (W.D. Ky. Mar. 13, 2014). Likewise, "[t]rying the two claims together would be prejudicial because it would unnecessarily interject the issue of bad faith into the primary dispute of liability, thereby. . . complicating the issues at trial[.]" *Id.* (citing *White*, 2014 WL 991734, at *44). Accordingly, bifurcation would likely

prevent jury confusion and prejudice to Defendant. As an additional point, the parties agreed that bifurcation is appropriate.

Therefore, the Court finds that the coverage and bad faith claims should be bifurcated for trial.

**b. Stay of Discovery on Bad Faith Claims**

The Court finds that stay of discovery on bad faith claims is inappropriate, particularly in light of recent decisions of this Court.

Although Defendant notes that federal courts applying Kentucky law have routinely stayed bad faith discovery until underlying coverage claims are resolved, [DN 9, at 4] (listing several cases), the Western District of Kentucky has recently adopted a more critical approach.

Historically, this Court justified staying bad faith claims in part to prevent unnecessary disputes over protected work product or privileged materials. *See Brantley v. Safeco Ins. Co. of Am.*, No. 1:11-CV-00054-R, 2011 WL 6012554, at *3 (W.D. Ky. Dec. 1, 2011). Indeed, this Court previously permitted discovery of entire claims files during the bad faith phase that would otherwise be shielded in the underlying contract action. *See Minter v. Liberty Mutual Fire Insurance*, No. 3:11-cv-249, 2012 WL 2430471, at *2 (W.D. Ky. June 26, 2012); *Shaheen v. Progressive Cas. Ins. Co.*, No. 5:08-cv-34, 2012 WL 692668 (W.D. Ky. Mar. 2, 2012). However, this landscape shifted significantly with *Patti's Holding Co. v. Zurich Am. Ins. Co.* No. 5:20-CV-84-BJB, 2011 WL 976294 (W.D. Ky. Mar. 31, 2025). There, this Court scrutinized the underpinnings of *Minter* and *Shaheen*, noting that they relied on out-of-jurisdiction cases where the insurer and insured were initially allied. "In that circumstance," this Court explained, "it's unsurprising that a client might obtain otherwise-privileged information regarding its own legal representation." *Id.* at *5. Those decisions permitting discovery of entire claims files during the

bad faith phase "aren't relevant. . . where the parties had separate counsel and were adverse to each other from the start." *Id.* In essence, *Patti's Holding Co.* reversed course on the issue and rejected the notion of a blanket exception to the attorney-client privilege to claims files in first-party bad faith cases, holding instead that standard privilege protections remain fully intact. *Id.* at 7. In effect, policyholder plaintiffs will have to rely on enumerated exceptions to attorney-client and work-product privilege under Kentucky law. Because the risk of prematurely exposing privileged materials is no longer heightened or altered by a bad faith framework, one of the rationales upon which this Court typically granted staying discovery has largely been dissolved.

Moreover, recent cases have emphasized another factor in determining whether to stay discovery for bad faith claims. Plaintiffs and Defendant directly cite *McKinley v. Allstate Ins. Co.* and *Domingo v. Allstate Vehicle & Prop. Ins. Co.* In those cases, the court noted that the plaintiffs' breach of contract and bad faith claims are "inextricably intertwined." *McKinley*, WL 1232288, at *3; *Domingo v. Allstate Vehicle & Prop. Ins. Co.*, No. 3:26-CV0275, 2026 WL 1232286, at *4 (W.D. Ky. May 5, 2026). On this basis, the court found that stay was inappropriate in each of those cases. This Court followed the logic of *McKinley* to find that the issues in this case are "inextricably intertwined."[1] Thus, on that basis, the Court finds that stay is inappropriate in this case as well.

Defendant attempts to distinguish the instant case than the cases in *McKinley* and *Domingo* by arguing that this case presents "an antecedent legal question" that can be resolved on the insurance policy and Kentucky's matching regulation, 806 KAR 12:095, "without reference to ASIC's claim-handling conduct." [DN 14, at 10]. The Court disagrees.

"Matching" is not a purely abstract legal question that can be isolated from claim-handling conduct as Defendant tries to portray it. In practice, matching would require evaluating what

---

[1] *See supra* Section III.a.

physical damage occurred, what materials are currently on the covered property, whether exact matching materials are commercially available, how the insurance adjuster investigated, measured, and decided to deny the matching funds during the claim-handling process. This means the coverage question and the claim-handling conduct are inherently bound up together, that is, "inextricably intertwined." *See McKinley*, 2026 WL 1232286, at *4 ("Plaintiffs' [coverage and bad faith] claims overlap and involve the same parties, actions, inactions, and timeframes, and otherwise require some of the same evidence to prove each."). The Court cannot look at the policy in a vacuum. It must look at what the adjuster saw, measured, and decided during the claim, that is, the Court may end up looking into the exact same adjuster files, inspection logs, and internal communications that would form the basis of the bad faith claim. This is enough to deny the stay of discovery. *O'Hara*, 2023 WL 572912, at *12 (denying defendants' request to stay discovery because claims "*could* involve the same or similar information as other claims in the case" (emphasis added)).

Moreover, the Court disagrees with Defendant's characterization of Plaintiff's claim under 806 KAR 12:095. Plaintiffs are alleging that Defendant violated 806 KAR 12:095 by failing to provide them with notice that they must file suit against Defendant within one year after the inception of loss or damage 30 days in advance of that deadline. [DN 1-1, at 12]. They assert that Defendant "failed to pay [them] for the full replacement value for their losses" to provide the predicate for such a suit. *Id.* That does not pose an "antecedent coverage question." And nowhere in their complaint's allegation of breach of contract do Plaintiffs assert a "matching theory" to support it. Further, Defendant points to nowhere in Plaintiffs' complaint or in their response to Defendant's Motion where they do so.

Defendant attempts to make a further distinction by asserting that it "seeks only to sequence the broader discovery categories unique to bad faith claims, not the factual basis for its coverage decisions. Accordingly, the predicate that drove the decisions in both *McKinley* and *Domingo* are absent here." [DN 14, at 10]. The issue is Plaintiffs and Defendant may well litigate what is or is not a "broader discovery categories unique to bad faith claims" and what falls or what does not fall into them. *McKinley*, 2026 WL 1232286, at *4; *Domingo*, 2026 WL 1232286, at *4. *McKinley* and *Domingo* emphasized that because a coverage decision and bad faith handling are the same conduct with the same underlying facts, what is and is not discoverable would be litigable. Their quotation to *O'Hara* is relevant here: "because the lines between these claims are somewhat blurred in this case, any bifurcation of discovery would inevitably lead to more litigation about where the line between permissible discovery and deferred discovery would be drawn and would create inefficiencies such as multiple depositions of the same witnesses." *O'Hara*, 2023 WL 5729212, at *12 (E.D. Ky. Sept. 5, 2023) (quoting *Duggan v. The Vill. of New Albany*, 2009 WL 2132622, at *4 (S.D. Ohio 2009)). Thus, bifurcating discovery would hinder judicial economy rather than promote it.

In sum, Defendant's distinctions do not warrant a different outcome. Accordingly, the Court finds that a stay of discovery on the bad faith claims is inappropriate.

## IV. Conclusion

For the reasons set forth above, Defendant's Motion [DN 9] is **GRANTED IN PART, DENIED IN PART.**

**IT IS ORDERED** that Defendant's Motion to bifurcate is **GRANTED**, and Defendant's Motion to stay discovery is **DENIED**.

November 20, 2026

**Lanny King, Magistrate Judge**
**United States District Court**